**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**KAISER STEEL CORPORATION, Respondent.**

**No. 82–7314.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 13, 1983.

Decided March 3, 1983.

Robert E. Allen, N.L.R.B., Washington, D.C., for respondent.

David B. Reeves, Kaiser Steel Corp., Fontana, Cal., for respondent.

Before WRIGHT and CHOY, Circuit Judges, and REED,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

The Board seeks enforcement of its order finding that Kaiser Steel committed an unfair labor practice by refusing to let striking employees remove tools from its Napa, California plant. Because we do not consider Kaiser's conduct "inherently destructive" of important employee rights, we deny enforcement of the Board's order.

## FACTS

The facts are undisputed. Kaiser required machinists at its Napa plant to furnish their own tools. Except during strikes, it allowed its employees to remove their tools, and to take them home just before a strike began.

In July 1980, the craft unions, including the machinists, went out on strike. Hoping to find interim employment, two machinists attempted thereafter to remove their tools from the plant. Kaiser refused to release the tools, but let the men apply preservatives to them.

These employees complained to the machinists union, which filed unfair labor practice charges. The Board issued a complaint charging Kaiser with violating sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (3).

At a hearing before an Administrative Law Judge, counsel for the NLRB argued that Kaiser's tool retention policy was "inherently destructive" of the right to strike. The ALJ agreed, and determined that Kaiser had violated both sections 8(a)(1) and (a)(3).

The ALJ required Kaiser to post signs announcing that it had committed an unfair labor practice, and ordered it to compensate any employees who were prevented from finding interim employment because they could not obtain their tools.[1] The NLRB adopted the order of the ALJ with minor changes.

## ANALYSIS

Although the NLRB apparently found independent violations of sections 8(a)(1) and (a)(3), those stem from the effect of Kaiser's policy on the right to strike.[2] Section 8(a)(1) of the NLRA makes it an unfair labor practice for an employer to "interfere with, restrain, or coerce employees in the exercise of their rights guaranteed by section 7" of the NLRA, which includes the right to strike. *NLRB v. International Rice Milling Co.*, 341 U.S. 665, 672–73, 71 S.Ct. 961, 964–65, 95 L.Ed. 1277 (1951).

Section 8(a)(3) prohibits an employer from encouraging or discouraging union

---

* Of the District of Nevada.

1. The ALJ had no evidence that any employee suffered harm as a result of Kaiser's policy. Of the two employees who tried to remove their tools, one found interim employment and borrowed a set of tools. The other gave up looking for work not because he had no tools, but because he could find no interim employment.

2. Although some of our cases distinguish between "derivative" and "independent" violations of sections 8(a)(1) and (a)(3), the parties and the ALJ made no such distinction here. Cf. *Fun Striders, Inc. v. NLRB*, 686 F.2d 659 (9th Cir.1982).

membership by discriminating with regard to hire, tenure, or any term or condition of employment. The Supreme Court has ruled that section 8(a)(3) also protects the right to strike. *NLRB v. Erie Resistor Corp.,* 373 U.S. 221, 233, 83 S.Ct. 1139, 1148, 10 L.Ed.2d 308 (1963).

■ Ordinarily, the NLRB must support its charges of unfair labor practices by proving an employer's unlawful motivation to discourage union membership or interfere with the exercise of protected rights. *Portland Willamette Co. v. NLRB,* 534 F.2d 1331, 1334 (9th Cir.1976). Here, the NLRB has offered no evidence of antiunion motivation, and it relies instead on the "inherently destructive" exception to its burden of proving antiunion animus. *See NLRB v. Great Dane Trailers,* 388 U.S. 26, 34, 87 S.Ct. 1792, 1797, 18 L.Ed.2d 1027 (1967).[3]

■ The NLRB need not prove antiunion motivation when an employer commits "inherently destructive" acts because such acts carry with them their own indicia of unlawful intent. *Erie Resistor,* 373 U.S. at 227–31, 83 S.Ct. at 1144–47. Acts such as the permanent discharge of strikers or the granting of superseniority to nonstrikers are so destructive of the right to strike that the NLRB may find an unfair labor practice even if the employer offers some evidence of legitimate purposes behind the acts. *Id.* at 231, 83 S.Ct. at 1147.

■ We have said that an act is inherently destructive if it creates "visible and continuing obstacles" to the future exercise of employee rights. *Portland Willamette Co.,* 534 F.2d at 1334. Although we may not approve Kaiser's conduct, we refuse to rule that its behavior was so harmful that it merited the "inherently destructive" label. That label simply does not fit these facts.

The NLRB argues that the policy will deter employees in the future from exercising the right to strike. It points out that some workers such as machinists must have tools to make themselves attractive to in-

terim employers, and it likens Kaiser's policy to blacklisting of employees because of strike activity.

The NLRB does not dispute, however, that Kaiser had the right to lock out its employees altogether from the plant. *See NLRB v. American Shipbuilding,* 380 U.S. 300, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965). The workers had an opportunity to remove their tools before the striking, and many did so. The strike was of very short duration, and unlike superseniority or permanent discharge, the tool retention policy had no long term effects on strikers.

Kaiser's retention of the tools creates no "visible and continuing obstacles" to the future exercise of the right to strike. At no time did it assert any property right in the tools. Having learned of that policy, the union could advise its members before striking to remove their tools if they anticipate a need for them. In this situation, and this situation alone, we conclude that Kaiser's policy was not "inherently destructive."

Enforcement denied.

---

**3.** If discriminatory effect is "slight," the employer must show "legitimate and substantial" business justifications for its conduct. *Great Dane Trailers,* 388 U.S. at 34, 87 S.Ct. at 1797.

Under the authority of *American Ship Bldg. v. Labor Board,* 380 U.S. 300, 310, 85 S.Ct. 955, 963, 13 L.Ed.2d 855 (1965), the conduct of Kaiser has such business justification.